**James HILL, et al., Plaintiffs,**

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. C81–294A.**

United States District Court,
N.D. Georgia,
Atlanta, Division.

May 4, 1984.

Isabel Gates Webster, Atlanta, Ga., for plaintiffs.

W. Stell Huie, Paul A. Howell, Jr., Laura M. Murphy, Kutak, Rock & Huie, Atlanta, Ga., for defendant.

FORRESTER, District Judge.

## ORDER

This employment discrimination action is before the court on defendant's motion for summary judgment and partial summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, defendant's motion shall be granted in part and denied in part.

## PROCEDURAL HISTORY

This action was filed on February 17, 1981, by 34 persons who claimed to represent a class of persons who had applied for employment with the Metropolitan Atlanta Rapid Transit Authority ("MARTA"), or who had been employed by, or terminated by, MARTA during the time period June of 1978 through January 1, 1981. Plaintiffs allege unlawful employment discrimination practices against blacks in hiring, classification, promotion, and termination. Substantively, plaintiffs allege that MARTA has violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as Sections 1981, 1983, and 1985 of Title 42; additionally, plaintiffs allege that MARTA's conduct is repugnant to the thirteenth and fourteenth amendments to the United States Constitution. Plaintiffs seek the following relief: (1) A declaratory judgment that MARTA's policies are in violation of the plaintiffs' rights under the laws enumerated above; (2) a permanent injunction; (3) a making whole of those persons adversely affected, including an affirmative action program;

(4) damages for mental distress; and (5) punitive damages.

On March 11, 1981, plaintiffs filed an amendment to their complaint attempting to add sixteen additional plaintiffs.

The claims of eight plaintiffs have been dismissed for their failure to adhere to the rules of discovery.

On June 4, 1981, plaintiffs filed a motion to have the case certified as a class action. In an order dated March 30, 1982, the court denied plaintiffs' motion to certify.

On April 9, 1982, plaintiffs sought reconsideration of the denial of class certification. In an order filed March 10, 1983, this court reaffirmed its order denying class certification.

On June 24, 1983, four persons filed a petition to be allowed to intervene in this action; in the alternative, plaintiffs sought pursuant to Fed.R.Civ.P. 21 to add these persons as plaintiffs. On July 19, 1983, two more individuals and the plaintiffs filed an identical motion. In an order dated August 5, 1983, the applicants' motions to intervene were denied, and plaintiffs' motion pursuant to Fed.R.Civ.P. 21 was denied.

Through an order dated December 13, 1983, this court denied a motion by Larry Smith to have him reinstated as a party.

### I.

Plaintiffs allege that MARTA has violated the provisions of 42 U.S.C. § 1985. Complaint, ¶ III, at 2. Although plaintiffs have not specified on which of the subparagraphs of that section they rely, it is apparent that they purport to bring a claim under subsection (3) for conspiracy to deprive them of equal protection of the laws. 42 U.S.C. § 1985(3).

██ It is well settled that a deprivation of a right created by Title VII cannot be the basis for a cause of action under 42 U.S.C. § 1985. *Great American Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Garcia v. Gloor*, 618 F.2d 264, 271 (5th Cir.1980). In this action, from a fair reading of plaintiffs' charging documents, it is apparent that all of plaintiffs' claims arise out of their assertion that MARTA has deprived them of employment opportunities in violation of Title VII. *See* Complaint, ¶¶ I, III. Accordingly, MARTA is entitled to summary judgment on plaintiffs' claims brought under 42 U.S.C. § 1985, on the ground that they fail to state a claim against MARTA upon which relief can be granted.

### II.

Michael Fuller sought employment with MARTA as a bus operator on or about October 4, 1978. On May 3, 1979, Fuller took the Validated Test Battery for Bus Operators; however, he failed to achieve a passing score. Affidavit of William D. Dean, ¶ 4. On June 6, 1979, Fuller was informed that he was not qualified to become a bus operator because he failed the test. Exhibit 1 to Defendant's Motion for Summary Judgment and Partial Summary Judgment.

Clarence W. Knighton applied for a job as a bus operator on or about January 22, 1979. On both May 10, 1979, and November 13, 1979, the Validated Test Battery for Bus Operators was administered to Knighton. On both occasions, Knighton failed the examination. Affidavit of Dean, ¶¶ 5, 6. Knighton was informed that he failed the exam on June 6, 1979, and on November 16, 1979. Exhibits 2 & 3.

Maurice Mobley applied for a bus operator's position on February 9, 1979. He took and failed the Validated Test Battery for Bus Operators on March 27, 1979. Affidavit of Dean, ¶ 7. He was informed on March 30, 1979, that he did not meet the minimum requirements for becoming a bus operator because he had not passed the test. Exhibit 4.

Defendant argues that it is entitled to judgment on the discrimination claims of these plaintiffs because they were not qualified to be bus operators.

128

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the *prima facie* elements of a discrimination case in which a plaintiff claims that he was not employed. A plaintiff must prove the following:

(1) That he belongs to a racial minority;

(2) That he applied and was qualified for a job for which the employer was seeking applications;

(3) That, despite his qualifications, he was rejected; and

(4) That, after his rejection, the position remained open and the employer continued to seek applications from persons of the complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824. Defendant relies upon the second element of the *McDonnell Douglas Corp.* test in arguing that these three plaintiffs cannot prove a *prima facie* case of racial discrimination against MARTA since they cannot show that they were qualified for the position that they sought.

In this case, it is undisputed that each of these three plaintiffs took the test and failed to meet the minimum acceptable level to qualify for consideration for the position of a bus driver at MARTA. Affidavit of Dean, ¶¶ 4, 5, 6, 7. These plaintiffs were rejected for the position of bus operator at MARTA because they failed to meet the minimum acceptable level on the Validated Test. Affidavit of Dean, ¶ 9.

In reply, these plaintiffs argue that the test is invalid, inasmuch as it is not in accordance with EEOC guidelines and has an adverse impact on blacks or women. In support of this argument, plaintiffs submit the affidavit of Samuel J. Tucker.[1] In analyzing data of those persons hired and not hired among majority and minority applicants between the period from October 1, 1978, through September 30, 1979, Dr. Tucker concludes that the selection procedures of MARTA have an adverse impact upon the minority applicants. His conclusion is based upon a use of a CHI$^2$ coefficient; specifically, he states:

The obtained CHI$^2$ is statistically significant at the .001 level of confidence. We may conclude that the hiring policy had an adverse impact on black applicants. The odds are one in 1,000 that such a selection would occur by chance.

Dr. Tucker's use of the CHI$^2$ coefficient is disputed, however, by Dr. Melany E. Baehr.[2] Dr. Baehr specifically states the following:

Dr. Tucker's use of the CHI$^2$ coefficient for these data is inappropriate and the results obtained professionally unacceptable. According to the Uniform Guidelines, the "four-fifths rule" is appropriate to determine if the Validated Test has an adverse impact on minorities. According to this rule, there is no adverse impact if the selection rate for any race, sex, or ethnic group is 80% or more than that of the group with the highest selection group.

The statistics used by Dr. Tucker reveal that use of the Validated Test by MAR-

---

1. Dr. Tucker is a "licensed psychologist in private practice and ... an experienced teacher and consultant. In addition to [his] many years of experience as a psychologist, [he] has served as professor of psychology, dean of students, dean of faculty, and a college president." Affidavit of Dr. Samuel J. Tucker, ¶ 1.

2. Dr. Baehr is an industrial/organizational psychologist as well as a researcher, teacher, and consultant. Until June of 1982, he was the Associate Director of Research of the Human Resources Center of the University of Chicago. During his tenure at the university, he served as a principal investigator for national studies of employment selection procedures in both the public and private sectors. He was the princi-

pal investigator for the research project which culminated in the Validated Test Battery for Transit Operators. He testifies that the national validation sample showed no adverse impact for any race, sex, or ethnic group in accordance with either the 1970 EEOC Guidelines on Employee Selection Procedures or the 1978 Uniform Guidelines on Employee Selection Procedures Adopted by the EEOC, the Civil Service Commission, the Department of Labor, and the Department of Justice. He further testifies that the test has been implemented in over 100 transit companies since 1974 without any demonstrated adverse impact for any race, sex, or ethnic group. *See* Second Affidavit of Dr. Melany E. Baehr, ¶ 5.

TA does not have an adverse impact on blacks. The pass rate for blacks is 40.71% (114 blacks passed this Validated Test—280 blacks took this test); and for whites is 49.92% (300 whites passed the Validated Test—601 whites took the test). Applying the four-fifths rule, we find that blacks have an acceptance rate of (40.71 divided by 49.92 times 100) 81.55% of that of whites; and there is, therefore, no adverse impact on blacks. Second Affidavit of Dr. Melany E. Baehr, ¶¶ 6, 7. Indeed, the regulations promulgated by the EEOC state that whether a selection procedure has an adverse impact is to be determined by application of the four-fifths rule. 29 C.F.R. § 1607.4(D). If the passing rate on a test for the minority group is at least 80% of the passing rate of persons in the majority group taking the same test, the test has no adverse impact on minorities. 29 C.F.R. § 1607.4(D). Thus, under EEOC regulations, there is no adverse impact.

Notwithstanding Dr. Baehr's conclusion that pursuant to the EEOC regulations, there is no adverse impact on blacks, for purposes of a Rule 56 adjudication, a question of fact could exist as to whether this employment test has a disproportionate impact on racial minorities such that the effect of the test is discriminatory. In other words, this court cannot as a matter of law conclude that no circumstantial evidence of intent to discriminate is presented, inasmuch as these EEOC Uniform Guidelines are not mandatory legal rules. As the Second Circuit has noted, these guidelines "are entitled to deference, not obedience." *Guardians Association v. Civil Service Commission*, 630 F.2d 79, 91 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). *See also Teal v. Connecticut*, 645 F.2d 133, 137 n. 6 (2d Cir.1981), *aff'd*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). While administrative regulations have the force of law, EEOC guidelines have never been submitted to adversary comment and public scrutiny as required by the Administrative Procedure Act. Thus, since the guidelines were promulgated without public comment,

the distinction between guidelines and regulations is of some importance. If guidelines promulgated with none of the APA safeguards were to have substantially the same force as regulations, the underlying purposes of the APA requirements would be undercut and bypassed. 3 A. Larson & L. Larson, *Employment Discrimination* § 75.64, at 15–38 to 15–39 (1983).

The inquiry, however, does not end with the observation that a question of fact exists as to whether this test has an adverse impact on blacks. MARTA has produced evidence to show a demonstrable relationship between the test results and successful performance of the job for which it was used. First Affidavit of Baehr, ¶¶ 2, 3, 5, 6. In fact, the Validation Test Battery for Transit Operators has been validated on three separate occasions over a period of ten years, and in all three analyses, the Validated Test Battery was upheld, with cross validity coefficient well beyond the .05 level of confidence required by the Uniform Guidelines. Second Affidavit of Baehr, ¶ 9.

With respect to the species of employment discrimination law dealing with testing, Title VII forbids the use of an employment test that has a disproportionate impact on racial minorities, unless the employer meets the burden of proving that the test is job related; job-relation ordinarily is proved by validation studies meeting professional standards, such as the Uniform Guidelines on Employee Selection Procedures. *See generally*, 3 A. Larson & L. Larson, *Employment Discrimination* § 75.00–80 (1983). The seminal case dealing with job hiring requirements under Title VII is *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), wherein the Supreme Court stated:

Nothing in the Act precludes the use of testing or measuring procedures; obviously they are useful. What Congress has forbidden is giving these devices and mechanisms controlling force unless they are demonstrably a reasonable measure of job performance. Congress has not

commanded that the less qualified be preferred over the better qualified simply because of minority origins. Far from disparaging job qualifications as such, Congress has made such qualifications the controlling factor, so that race, religion, nationality, and sex become irrelevant. What Congress has commanded is that any tests used must measure the person for the job and not the person in the abstract.

401 U.S. at 436, 91 S.Ct. at 856. In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court amplified the law by ruling that a *prima facie* case of discrimination is established where evidence shows that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants. *Id.* at 425, 95 S.Ct. at 2375. Upon such a showing of disproportionate impact, however, the burden then shifts to the employer to show that any given requirement has a manifest relationship to the employment in question, and that the disparity is the product of non-discriminatory factors. *Id.*

■ Significantly, in this case, plaintiffs present no evidence that this test is not significantly and rationally related to the employment in question. Plaintiffs fail to show "that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Moody,* 422 U.S. at 425, 95 S.Ct. at 2375 (citing to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973)). Thus, plaintiffs fail to show that MARTA has been using these tests merely as a pretext for discrimination. Therefore, inasmuch as there is no dispute of fact as to the job-relatedness of the test, the court concludes that summary judgment is proper for MARTA. *Cf. Corley v. City of Jacksonville,* 506 F.Supp. 528 (N.D.Fla. 1981) (District Court held that *prima facie* case was completely rebutted by a showing that the test had been validated in accordance with EEOC regulations).

In summary, the court concludes that MARTA is entitled to judgment as a matter of law on the discrimination claims of Michael Fuller, Clarence W. Knighton and Maurice Mobley on the grounds that they were not qualified to be bus operators and therefore cannot establish a *prima facie* case of discrimination under the *McDonnell Douglas Corp.* standards, and that the Validation Test Battery for Transit Operators has a manifest relationship to the employment in question and any disparity is the product of non-discriminatory factors.

### III.

Defendant argues that it is entitled to summary judgment on the Title VII claims of sixteen plaintiffs, on the grounds that they have never filed charges of discrimination. Although defendant concedes that James Hill filed a charge of discrimination within the time period during which these plaintiffs allege that MARTA discriminated against them, defendant cites to *Allen v. United States Steel Corp.,* 665 F.2d 689 (5th Cir.1982), as standing for the following legal proposition:

> [T]he discriminatory treatment had to have taken place within one hundred and eighty days of the date on which the filing plaintiff filed his charge of discrimination. Otherwise, the stale claims of persons who did not file timely charges, and who could not participate in a class action would be revitalized, and the filing requirement of Title VII completely abrogated.

Defendant's Supplemental Memorandum, at 12. Applying that premise to the facts of this case, defendant argues that since James Hill is the only plaintiff who filed a charge of discrimination within the time frame of the events about which plaintiffs complain, only those persons who could have filed a charge on the date Hill filed his charge can maintain Title VII actions. Thus, defendant contends that inasmuch as Hill filed a charge on September 16, 1980, only those persons who were refused employment after March 20, 1980 (September

16, 1980 less 180 days), may maintain Title VII actions, even though they did not file charges of discrimination.

A discussion of the issue of whether every original plaintiff in a multiple-plaintiff, non-class action suit must file charges with the EEOC is found in the seminal case of *Crawford v. United States Steel Corp.*, 660 F.2d 663 (5th Cir.1981) (Former Fifth Circuit Case). In *Crawford*, the Fifth Circuit held that "in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment *in the same time frame* need not have satisfied the filing requirement." *Allen v. United States Steel Corp.*, 665 F.2d 689, 795 (5th Cir. 1982) (Former Fifth Circuit Case) (emphasis added). Defendant is not arguing that James Hill's claim is not substantially identical with that of these sixteen plaintiffs. *See, e.g., Ezell v. Mobil Housing Board*, 709 F.2d 1376, 1380–81 (11th Cir.1983). *Jones v. First Federal Savings and Loan Association*, 546 F.Supp. 762, 775 (M.D.N. C.1982). Nor is defendant arguing that James Hill did not timely file, thereby making the sixteen plaintiffs' claims time-barred. *See Allen v. United States Steel Corp., supra.*

Yet, MARTA's argument that "in the same time frame" must be construed so as to disallow the stale claims of persons who did not file timely charges and to prevent the filing requirement of Title VII from being abrogated has some force. As this court observed in *Dague v. Riverdale Athletic Association*, 99 F.R.D. 325 (N.D.Ga. 1983): "The purpose of the requirement is twofold: It affords notice to the charged party of the complaint against him, and it affords an opportunity for the charged party to resolve the problem through conciliation before being exposed to liability." *Id.* at 326. Yet, neither *Crawford* nor *Allen* provides specific guidance on how to evaluate claims such as those presented here. As the Supreme Court stated, any "limitations period, while guaranteeing the protection of the civil rights laws to those who

promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250 at 256–57, 101 S.Ct. 498 at 503, 66 L.Ed.2d 431.

■ The court concludes that a fair and logical time frame for determining the meaning of the phrase "within the same time frame" as utilized by *Crawford* and *Allen* is to juxtapose the date that the filing plaintiff claims to have been discriminated against less 180 days with the date that the non-filing plaintiff was allegedly discriminated against. In this case, Hill alleges that he was refused employment by MARTA on June 16, 1980. One hundred eighty days less that date is December 19, 1979. Thus, only those persons who were allegedly discriminated against by being refused employment after December 19, 1979, may maintain a Title VII action notwithstanding the fact that they did not file charges of discrimination. MARTA alleges that the Title VII claims of sixteen persons must be dismissed:

| Plaintiff's Name: | Last Date of Alleged Discrimination Against Plaintiff: |
| --- | --- |
| Harriett Outlaw | June 1977 |
| Ronald Witherspoon | August 1977 |
| Juanita Nixon | September 28, 1978 |
| Henry Burton | Latter Part of 1978 |
| Maurice Mobley | March 30, 1979 |
| Hazel Hill | April 1979 |
| Vernon Matthews | May 9, 1979 |
| Michael Fuller | June 6, 1979 |
| Clarence Knighton | June 6, 1979 |
| Alvin Shorts | June 13, 1979 |
| Arneatha Clark | July 1979 |
| Constello Williams | July 13, 1979 |
| Thomas Reed | August 1979 |
| Maurice Gaither | November 1979 |
| Sandra Saunders | February 1980 |
| Jimmie Purvis | Early March 1980 |

Applying this court's reading of *Crawford* and *Allen*, it appears that only Sandra Saunders and Jimmie Purvis' Title VII claims arise out of the same time frame as Hill's claims, and, therefore, they need not have satisfied the filing requirement. MARTA is entitled to summary judgment

as to the claims of the other fourteen persons, however.

## IV.

MARTA argues that it is entitled to judgment on the discrimination claims of six plaintiffs because they did not apply for employment with MARTA. MARTA argues that since one of the fundamental elements of a discrimination claim of a failure to hire is proof that the plaintiff applied for a job, and since Henry Burton, Maurice Gaither, Hazel Hill, Jimmie Purvis, Sandra Saunders, and Ronald Witherspoon never applied for employment, Affidavit of Marnie McIntosh, ¶ 4 (Marnie McIntosh is the Personnel Director for MARTA), it is entitled to judgment on the discrimination claims of these six plaintiffs.

■ In response, plaintiffs submit, in their Statement of Material Facts as to Which There is a Genuine Issue to be Tried, the following:

> Henry Burton, Maurice Gaither, Hazel Hill, Jimmie Purvis, Sandra Saunders, and Ronald Witherspoon, black applicants, were denied applications by MARTA personnel when they presented themselves at the MARTA employment office. MARTA discriminated against them when it refused to give them applications.

Plaintiffs' Statement, ¶ 2.

In response to Plaintiffs' Statement, MARTA submits the Second Affidavit of Marnie McIntosh, which provides:

> In 1978 and 1979, MARTA accepted completed applications from all persons who submitted them. MARTA did not refuse to accept an application from any person who tendered such an application to MARTA.

Second Affidavit of McIntosh, ¶ 3. Given this conflict in the factual record, summary judgment cannot be entered against these six plaintiffs. *See* Fed.R.Civ.P. 56(c). Notwithstanding the conclusion that MARTA is not entitled to summary judgment as to these six plaintiffs' claims, MARTA points out in its reply brief inconsistencies in testimony with respect to four of these six plaintiffs. For example, MARTA shows that in an affidavit of Maurice Gaither, he has testified that he applied for employment in October of 1979 and later received a letter saying that he would not be hired. This is obviously inconsistent with the Statement of Material Facts appended to plaintiffs' opposition to summary judgment, which stated that Maurice Gaither was denied an application by MARTA personnel when he presented himself at the MARTA employment office. The court finds such inconsistencies troublesome. The court is mindful of the provisions in Fed.R.Civ.P. 56(g), and would be willing to impose sanctions on those persons who have filed evidentiary materials in bad faith should it appear to this court's satisfaction at any subsequent time that any of the evidentiary materials presented were presented solely for the purpose of delay or presented in bad faith. *See also,* Fed.R. Civ.P. 11. *Cf. Glover v. Libman,* 578 F.Supp. 748, 769 (N.D.Ga.1983) (ethics of disqualification of opposing counsel).

## V.

Defendant argues that it is entitled to summary judgment on the monetary claims by Willie Smith, Henry Burton, Harriett Outlaw, Constello Williams, and Juanita Nixon under 42 U.S.C. §§ 1981 and 1983 [3] because these claims are barred by the two-year Georgia statute of limitations.

This lawsuit was filed on February 17, 1981. Willie Smith was an unsuccessful applicant for employment in either Decem-

---

3. Most technically, defendant argues that it is entitled to judgment on the claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, on the ground that they are barred by the two-year Georgia statute of limitations. This court, however, in Section I of this Order held that MARTA is entitled to summary judgment as to plaintiffs' claims pursuant to 42 U.S.C. § 1985 on the ground that a deprivation of a right created by Title VII cannot be the basis for a cause of action under 42 U.S.C. § 1985. Accordingly, a discussion of the issue of whether plaintiffs' claims under 42 U.S.C. § 1985 should be dismissed on the ground that these claims are barred by the two-year statute of limitations is not required.

ber of 1972 or January of 1973. Henry Burton claims to have sought employment in the latter part of 1978. Harriett Outlaw sought employment on April 19, 1977; in June of 1977, she was informed that she would not be hired for the job. Constello Williams sought employment on July 13, 1978, and was informed on that same day that he would not be employed. Juanita Nixon applied for a job on September 27, 1978, and was informed on that same day that she would not receive the job.

In *Whatley v. Department of Education,* 673 F.2d 873 (5th Cir.1982) (Unit B), the Fifth Circuit held that with respect to employment discrimination actions, Ga. Code Ann. § 3–704 [O.C.G.A. § 9–3–22] is the applicable statute of limitations for a Section 1981 claim. The court read the Georgia statute as to be applied in a bifurcated manner "so that an action for equitable relief is barred only after twenty years, but an action for back pay is barred after only two years." *Id.* at 877. *See also Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1350–51 (11th Cir.1983).

Defendant assumes that the same reasoning in *Whatley* applies to Section 1983 employment discrimination actions; plaintiffs do not dispute this at all. The court concludes that *Whatley* can be read to encompass Section 1983 employment discrimination claims as well as Section 1981 claims, in light of the Fifth Circuit's decision in *Rubin v. O'Koren,* 644 F.2d 1023, 1025 (5th Cir.1981) (Unit B) ("It is well-established that in a Section 1983 action a federal court looks to state law for the appropriate limitations.").

In opposition to defendant's motion on this ground, these plaintiffs argue that MARTA has committed acts of continuous discrimination against them, citing to *Perez v. Laredo Junior College,* 706 F.2d 731 (5th Cir.1983). Initially, the court notes that *Perez* is not a decision from the Former Fifth Circuit. In *Perez,* the plaintiff was a member of the faculty of a state college institution. After receiving his Ph.D. degree, he sought additional compensation pursuant to the college's policy of granting a salary increase when a faculty member received a doctorate. He was denied the increase because any such increase was due only if the doctoral degree was in the instructor's teaching field. He commenced his action in federal district court more than three years and eight months after the college's Board of Trustees denied his appeal. Apparently, the district court dismissed his action on the ground that it is barred by the statute of limitations. The Fifth Circuit reversed the dismissal as to the plaintiff's theory alleging a continuing denial of equal treatment; specifically, Perez argued that each day he is not paid on the same basis as another faculty member is a separate violation of his constitutional rights. The Fifth Circuit, however, affirmed the district court's decision as to the other four counts in plaintiff's complaint, on the ground that plaintiff alleged a single violation.

The *ratio decidendi* in *Perez* was articulated as follows:

Although state law governs the substantive limitation period, federal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run. In deciding when the statute of limitations commences to run under Sections 1981 and 1983, we look to the Title VII cases. The determination "requires us to identify precisely" when the deprivation forbidden by Section 1983 or the denial of equal benefit of the laws forbidden by Section 1981 occurred. We assume that the continuing violation theory is available to remedy employment practices and policies that operate to deny employees their protected rights if the offending practice continued to be enforced during the limitations period. To establish a continuing violation, however, the plaintiff must establish that the unconstitutional or illegal act was part of "standard operating procedure," a fixed and continuing practice.

*Perez,* 706 F.2d at 733 (citations and footnotes omitted). However:

A plaintiff may not circumvent the limitations period by merely labeling an act a continuing violation. *Corbin v. Pan Am World Airways, Inc.*, 432 F.Supp. 939 (N.D.Cal.1977). "Rather, a plaintiff must maintain that a pattern of discrimination of employment *presently exists* to perpetuate the alleged wrong." *Id.* at 944 (emphasis added) ....

This court, as did the Fifth Circuit in *Dumas*, finds Judge Larson's analysis of fact patterns, where continuing violations are alleged, to be persuasive. [Citation omitted]. Judge Larson cited the Eighth Circuit decision in *Olson v. Rembrandt*, 511 F.2d 1228 (8th Cir.1975), in stating that the continuing violation theory has no validity when asserted by a former employee. This position is consistent with the principle that for violations to be continuous in nature, they must presently exist. Discrimination as to former employees does not presently exist because they are now acts completed and finalized in the past.

*Johnson v. Duval County Teachers Credit Union*, 507 F.Supp. 307, 310 (M.D.Fla. 1980). *See also Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir.1983) (Fifth Circuit enumerates three factors in order to support a finding of a continuous violation: (i) subject matter; (ii) frequency; and (iii) degree of permanence), *Clark v. Olin Kraft, Inc.*, 556 F.2d 1219, 1222 (5th Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978).

Willie Smith was an unsuccessful applicant for employment in either December of 1972 or January of 1973. He claims that he was not hired because of his arrest or police record and generally alleges that "the use of police records in the selection process has an adverse impact upon black applicants." Plaintiffs' Statement of Material Facts, ¶ 8. He points to nothing in the evidentiary record to support his general allegation. *See* Fed.R.Civ.P. 56(e). As such, his claim is, in effect, a single violation—a decision by MARTA not to hire him because of his background. Accordingly, MARTA is entitled to summary judgment on the monetary claims of Willie Smith brought under 42 U.S.C. §§ 1981, 1983.

Henry Burton purportedly sought employment in the latter part of 1978. He avers that MARTA refused to provide him with an application for employment. On the basis of Burton's status alone, summary judgment could be granted. *Johnson v. Duval County Teachers Credit Union, supra*. In this regard it is noted, however, that Maurice Gaither, Hazel Hill, Jimmie Purvis, Sandra Saunders, and Ronald Witherspoon, as well as Burton, claim that they were denied applications by MARTA personnel when they presented themselves at the MARTA employment office. *See* Plaintiffs' Statement of Material Facts, ¶ 1. Plaintiffs allege that this practice was part of MARTA's attempt "to accelerate the processing of white applicants to pass over black applicants and to hire white applicants." While not specifically raised by the plaintiffs, they could attempt to contend that their allegation raises the situation of a series of separate acts and, therefore, the limitations period begins anew with each violation. Nevertheless, such an argument would fail.

There was no uncertainty as to whether or when Burton and the others were informed that they would not receive applications. There was precise specificity as to the date of denial. As such, they were alerted to protect their rights by being in a position to perceive that discrimination was occurring. *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 978 (5th Cir.1980). *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1975); *Bronze Shields, Inc. v. The New Jersey Department of Civil Services*, 667 F.2d 1074, 1080–84 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

Accordingly, MARTA is entitled to summary judgment on Burton's Sections 1981 and 1983 claims.

Harriett Outlaw, a black female, sought employment at MARTA on April 19, 1977. She alleges that she had qualifications equal to or greater than the white applicant

who filled the position she was seeking. In effect, this alleges a single violation, a decision to deny Outlaw a job. Accordingly, MARTA is entitled to summary judgment on the monetary claims by Harriett Outlaw brought under 42 U.S.C. §§ 1981, 1983.

Constello Williams, a black male, filed an application for employment on July 13, 1978. He states that he was denied employment although he possessed the qualifications for the job, that there were positions available for which he was qualified, and that he was passed over while white applicants with less qualifications were hired. Plaintiffs' Statement, ¶ 4. Like Harriett Outlaw, Williams' position alleges a single violation. Even though the injuries resulting from that act may continue, the wrongful act itself, the denial of employment, did not continue. *See Perez*, 706 F.2d at 734. Accordingly, MARTA is entitled to summary judgment on the monetary claims by Constello Williams brought under 42 U.S.C. §§ 1981, 1983.

Juanita Nixon, a black female, applied for a job on September 27, 1978.

She sought a clerical position and a bus operator position. She was never informed that she would not receive a job. She continued to renew her application. MARTA had vacancies in both positions during the period her application was pending. She possessed the qualifications for these jobs. Her applications were not processed while the applications of white applicants were processed.

Plaintiffs' Statement, ¶ 6. Defendant, in support of its motion for summary judgment as to her claims under Sections 1981 and 1983, assumes that her sole application for a job occurred on September 27, 1978. Her statement, however, that she continued to renew her application, presents a problem of vagueness, and therefore this court cannot state that there is no genuine issue as to the material fact of when Juanita Nixon applied for a job. On this sole basis, defendant's motion for summary judgment as to her Sections 1981 and 1983 claims is DENIED without prejudice. If, at any time before trial, defendant can show affirmatively that her continuation to renew preceded the filing of the complaint

by two years, summary judgment would be appropriate.

In summary, MARTA is entitled to summary judgment on the monetary claims brought by Willie Smith, Henry Burton, Harriett Outlaw, and Constello Williams pursuant to 42 U.S.C. §§ 1981, 1983.

### VI.

Defendant argues that it is entitled to judgment as a matter of law on the claims of Alpha Ameen, on the ground that, as a matter of law, MARTA did not discriminate against Ameen. It is undisputed that Alpha Ameen applied for employment as a bus driver on September 4, 1979. Furthermore, it is undisputed that MARTA attempted to contact Ameen on January 9, 1980, to schedule an appointment for his taking a Validated Test Battery for Bus Operators, the successful completion of which was a necessary condition for becoming a bus operator for MARTA. Finally, it is undisputed that Ameen never responded to MARTA's request. Ameen responds as follows:

[His] application was not processed immediately. His failure to schedule an appointment would affect his damages but would not lead to the conclusion that he was not discriminated against.

Plaintiffs' Brief in Opposition at xii.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), establishes the *prima facie* elements of a discrimination case in which a plaintiff claims he was not employed. Among the criteria a plaintiff must prove is that he applied for and was qualified for a job for which the employer was seeking applications, and that, despite his qualifications, he was rejected. Thus, Ameen's not responding to MARTA's request fails to establish the threshold consideration that he applied for and was qualified for a job for which MARTA was seeking applications. As such, MARTA is entitled to summary judgment as to Ameen's claims, on the ground that Ameen has not shown that he applied for and was qualified for a job for which MARTA was seeking applications, and that, despite his qualifications, he was rejected.

CONCLUSION

1. Defendant is entitled to summary judgment as to all of the plaintiffs' claims under 42 U.S.C. § 1985.

2. Defendant is entitled to summary judgment as to the claims of Michael Fuller, Clarence W. Knighton, and Maurice Mobley, on the ground that they were not qualified to be bus operators.

3. Defendant is entitled to summary judgment on the Title VII claims of fourteen plaintiffs who have never filed charges of discrimination with the EEOC.

4. Defendant is not entitled to summary judgment on the claims of the non-applicant plaintiffs.

5. Defendant is entitled to summary judgment on the Sections 1981 and 1983 claims of Willie Smith, Henry Burton, Harriett Outlaw, and Constello Williams.

6. Defendant is entitled to summary judgment on the claims of Alpha Ameen, on the ground that he fails to make a showing that he applied for and was qualified for a job for which MARTA was seeking applications and that, despite his qualifications, he was rejected.