Dorothy ALLEN, et al., Plaintiffs-Appellants Cross-Appellees,

v.

UNITED STATES STEEL CORP., et al., Defendants-Appellees Cross-Appellants.

No. 80–7515.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 11, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Susan W. Reeves, Edward Still, Birmingham, Ala., for plaintiffs-appellants cross-appellees.

Thomas, Taliaferro, Forman, Burr & Murray, D. Frank Davis, Joseph W. Letzer, Cooper, Mitch & Crawford, Jerome A. Cooper, Birmingham, Ala., for defendants-appellees cross-appellants.

Before TUTTLE, RONEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this gender discrimination case, plaintiffs-appellants-cross-appellees Dorothy Allen, Eloise Lankford, Lorene Nolen, Doris Green, Hazel Byram, and Vera Globetti sued their employer, defendant-appellee-cross-appellant United States Steel Corporation ("U.S. Steel"), their national union, defendant-appellee United Steelworkers of America, AFL–CIO–CLC ("Steelworkers"), and their local union, defendant-appellee United Steelworkers of America, Local No. 2122 ("Local"). In their original complaint, plaintiffs alleged that in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and of the Equal

Pay Act of 1963, 29 U.S.C.A. §§ 206(d), 215(a)(3), defendant U.S. Steel discriminated against women in several ways, including its policies and practices concerning recruitment, hiring, initial job assignments, transfers, promotions, layoffs, recalls, wages and fringe benefits. In addition, plaintiffs alleged that the Steelworkers and the Local participated in U.S. Steel's gender discrimination. Plaintiffs also alleged that the Steelworkers and the Local have not represented the grievances of female workers as well as they have represented the grievances of male workers. Plaintiffs sought to proceed as a class under Fed.R. Civ.P. 23(b)(2) on behalf of all past, present and future female employees at U.S. Steel's Fairfield Works in Alabama. Plaintiffs do not appeal the district court's denial of class certification. After a pretrial conference, plaintiffs agreed to limit their claims to three major groups: (1) layoffs and recalls; (2) promotions; and (3) unequal pay. By the time of trial, plaintiffs further restricted their claims to layoffs and recalls in violation of Title VII. At some point thereafter, the plaintiffs again limited their claims to layoffs and recalls prior to May, 1973.[1] Plaintiffs contend that because of U.S. Steel's discriminatory layoff and recall policies, plaintiffs suffered layoffs lasting longer than two years, thus reducing the pension benefits and vacation time to which the plaintiffs would be entitled had U.S. Steel not discriminated against them. The district court ruled (1) that the complaints of all six plaintiffs were time-barred; (2) that from March, 1969 to May, 1973, the Steelworkers and the Local had not in any way failed to adequately represent plaintiffs' grievances; and (3) that U.S. Steel was entitled to recover from plaintiffs certain deposition costs. We affirm.

## I. ISSUES

This case presents six issues: (1) whether the three plaintiffs who filed complaints

[1]. Through a decree in May, 1973, the same district court that heard this case ordered major changes in the seniority structure of nine plants of U.S. Steel's Fairfield Works. *United States v. United States Steel Corp.*, 520 F.2d 1043 (5th Cir. 1979), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

with the Equal Employment Opportunity Commission ("EEOC") are time-barred from pursuing their Title VII claims; (2) whether the three nonfiling plaintiffs are also time-barred; (3) whether the district court properly refused to consider plaintiffs' claims of sexually discriminatory restroom facilities; (4) whether the district court properly excluded certain exhibits as containing large amounts of inadmissible material; (5) whether the district court properly dismissed plaintiffs' claims against the Steelworkers and the Local, relating to discrimination in the grievance process; and (6) whether the district court properly awarded deposition costs and denied paralegal costs to U.S. Steel.

## II. FILING PLAINTIFFS

■ The district court ruled that the three plaintiffs who had filed EEOC complaints were time-barred from pursuing their Title VII claims. Title VII requires persons claiming discrimination to file a complaint with the EEOC within 180 days after the allegedly discriminatory practice occurs. 42 U.S.C.A. § 2000e–5(e) (West 1974). This limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred. *McWilliams v. Escambia County School Board*, 658 F.2d 326, 328 & n.1 (5th Cir. 1981); *see Delaware State College v. Ricks*, 449 U.S. 250, 256–58, 261–262, 101 S.Ct. 498, 503–04, 506, 66 L.Ed.2d 431, 439–40, 442 (1980). Here, Lankford filed her EEOC complaint on December 15, 1969; Nolen filed on March 25, 1971; and Allen on May 30, 1974. In order to determine whether any of these filings were timely, we must identify the challenged discriminatory acts.

The plaintiffs all worked in the Tin Mill plant of U.S. Steel's Fairfield Works. The jobs in the Tin Mill are organized into lines of progression or promotion ("LOPs"). Until mid to late 1962, employees were laid off from their LOP in sequence, with layoffs from the bottom job in the LOP determined by the earliest point in time that the employee had served in the bottom job. In late 1962 and into 1963, U.S. Steel modified the LOP system by creating a "pool." All jobs in the three lowest pay grades within each plant, including the Tin Mill, and some of the jobs in the fourth lowest pay grade, were removed from the LOP system and placed into the pool. From the employees' perspective, the pool feature was more flexible than the former LOP-only system. Employees laid off from the revised LOPs could continue to work by accepting a pool job, which could be a job formerly unavailable to them under the LOP-only system. Pool jobs frequently were quite dirty and strenuous. Because of this, plaintiffs argued, U.S. Steel improperly assumed that only men were interested in pool jobs. Consequently, when a male employee was laid off from his revised LOP, he was offered a pool job. A similarly laid-off female employee, however, was not offered a pool job but was sent home. Thus, plaintiffs contend that their layoffs resulted from gender discrimination.

Once an employee was laid off, he or she could exercise recall rights. Part of those recall rights included the right to a pool job, depending upon the employee's seniority. Plaintiffs argued that again because of the dirty, strenuous nature of many pool jobs the company continually refused to recall women to those jobs and the defendant unions actively discouraged women from seeking those jobs.

■ For purposes of determining the timeliness of the EEOC complaints, we will focus on the allegedly discriminatory failure to recall the plaintiffs after layoff. Because recall necessarily occurs after layoff, the challenged failure to recall constitutes the most recent discriminatory act from which the 180-day filing period of Title VII could run. We assume arguendo—for the benefit of the plaintiffs—that throughout each layoff, pool jobs were available and were denied to the plaintiffs solely on the basis of their sex. As to when the plaintiffs were reasonably aware of the denial of any specific recall position, the district court ruled that the plaintiffs had "adequate opportunities" to ascertain which pool

jobs were available to those on layoff. On appeal, the plaintiffs do not contest this ruling, such as by arguing that during their layoff periods they were reasonably unaware that they were being denied recall positions. Thus, under our assumption as to denial of recall positions, and the district court's ruling on reasonable awareness of those denials, the most recent point from which the 180-day filing period of Title VII would run as to each layoff would be the last day of the layoff.

None of the three filing plaintiffs filed an EEOC complaint within 180 days from the last day of her most recent contested layoff. Lankford's most recent contested layoff ended in March, 1969. She did not file her EEOC complaint until December 15, 1969. Nolen's most recent contested layoff ended in February, 1969. She did not file her EEOC complaint until March 25, 1970. Allen's most recent contested layoff ended in April, 1973. She did not file her EEOC complaint until May 30, 1974. Thus, each filing plaintiff failed to submit an EEOC complaint within 180 days of her most recent challenged layoff.

Plaintiffs contend that because their desired pension and extended vacation benefits do not accrue until well after their layoffs, an EEOC complaint need not be filed until the benefits are due. In effect, plaintiffs argue that their discriminatory layoffs and recalls are continuing violations of Title VII, simply because the contested effects of those violations persist throughout an employee's career, through denial of extended vacations, and even until death, through reduced pension benefits. In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court squarely rejected the plaintiffs' continuing violation theory.

 The facts of *Evans* are difficult to distinguish from this case. In *Evans*, the employee failed to file her EEOC complaint within the then-required 90-day period after her allegedly discriminatory discharge. *Id.* at 554–55, 97 S.Ct. at 1887. Here, plaintiffs failed to file a timely complaint within 180 days after their contested layoffs. In

*Evans*, although the employee was rehired, her earlier discharge had long-lasting effects on valuable employment rights such as wages, the timing and duration of vacations, rights to retention in the event of layoffs, recall rights and rights to preferential selection of particular work within the company. *Id.* at 555 n.5, 97 S.Ct. at 1887 n.5. Here, although the plaintiffs were rehired, their earlier layoffs and delayed recalls now have and will continue to have persistent detrimental effects on their pension and vacation benefits. Yet, as the Supreme Court emphasized, the question of whether an EEOC complaint is timely turns on whether the discriminatory act has occurred within 180 days before filing, not on whether the effects of that discriminatory act are felt within 180 days of the filing. *Id.* at 558, 97 S.Ct. at 1889. In *Evans*, the employee had not alleged that the employer treated former employees discharged for a discriminatory reason any differently from employees discharged for a nondiscriminatory reason. *Id.* Here, plaintiffs do not allege that men who suffered long layoffs, (*i. e.*, over two years), presumably for nondiscriminatory reasons, are treated any differently, with respect to the pension and vacation benefits, from the plaintiffs, who suffered such layoffs for allegedly discriminatory reasons. Thus, plaintiffs have failed to allege that they suffered any discriminatory treatment within 180 days before they filed their EEOC complaint.

A recent decision of this court supports our reading of *Evans* to bar the claims of the filing plaintiffs. In *Dobbs v. City of Atlanta*, 606 F.2d 557 (5th Cir. 1979), a class of black employees claimed that a city's discriminatory hiring practices resulted in disparate pension treatment for blacks. The employees alleged that the city historically had funneled blacks exclusively or predominantly into the general employee category. The pension benefits for service in the general employee category were lower than the pension benefits for service in the police or firefighter category. *Id.* at 557. The employees did not allege that the city currently discriminated in hiring, and ap-

parently did not allege that any class member had been hired within 180 days before the filing of the EEOC complaint. *See id.* at 559. Thus, the *Dobbs* employees advanced a continuing violation theory, asserting that the separate pension plans perpetuated the effects of past hiring discrimination. *Id.* at 558. This theory is similar to the instant plaintiffs' theory that presently reduced pension and vacation benefits perpetuate the effects of past layoff and recall discrimination.

Relying on *Evans*, the *Dobbs* court rejected the employees' theory. The employees had not alleged current discrimination in the form of pension plans themselves presently discriminating on the basis of race. The *Dobbs* plans provided different pensions based upon the risks and demands of the work performed, not based upon race. The same problem exists in this case. Plaintiffs' pension and vacation benefits are reduced because they suffered long layoffs in the past, not because they are women. Men with the same layoff record, even though laid off for nondiscriminatory reasons, evidently endure the same reduction in pension and vacation benefits as plaintiffs. Plaintiffs have not argued otherwise. Thus, the discrimination against plaintiffs was complete by the time their most recent layoff ended, even under the most extreme assumption that each plaintiff was discriminatorily denied recall throughout each layoff.

In their reply brief, plaintiffs contend that their situation is similar to that in which an employer pays a weekly salary to women that is 80% of what men, performing the same work, receive. If such a policy begins on January 1, plaintiffs argue, then rejecting the plaintiffs' continuing violation theory here would also preclude the lower-paid women in the example from contesting their lower pay 180 days after the 80% rule begins. This argument reflects a fundamental misunderstanding of the *Evans* rule. The underpaid women in the example are paid 20% less each week because they are women and not men in *that week*. By contrast, plaintiffs here will receive lower pension and vacation benefits not because they are *women* who were laid off for periods exceeding two years, but because they are *employees* who were so laid off. This is the critical distinction. If plaintiffs alleged that men who were laid off over two years do not endure the same pension and vacation benefit reductions suffered by plaintiffs, then plaintiffs would have timely filed. Plaintiffs have not so alleged.

In support of their continuing violation theory, plaintiffs cite *Alabama Power Co. v. Davis*, 383 F.Supp. 880 (N.D.Ala.1974), *aff'd per curiam*, 542 F.2d 650 (5th Cir. 1976) (on basis of district court opinion), *aff'd on other grounds*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). In *Davis*, an employee's pension benefits were reduced because he had spent time in national military service. 383 F.Supp. at 884. He argued that federal statutes concerning veterans prohibited his employer from effectively penalizing him for his military service. *Id.* at 882–83. The district court held that the applicable limitations period did not begin to run on the employee's pension claim until his retirement or until each pension installment was due. *Id.* at 893–94. We reject plaintiffs' suggestion that a similar rule should apply in employment discrimination actions to determine the time from which the 180-day period of Title VII runs. First, the district court in *Davis* applied Alabama law to the limitations question involved in that case. *Id.* at 892. The issue here is whether plaintiffs' claims are barred by the 180-day limitation of Title VII, which is of course an issue of federal law. Second, in the employment discrimination context, adoption of the *Davis* rule would be inconsistent with the Supreme Court's rejection of the continuing violation theory in *Evans*. At least one post-*Evans* district court has explicitly held that the *Davis* rule does not apply in the employment discrimination context. *Simmons v. South Carolina State Ports Authority*, 495 F.Supp. 1239, 1245–46 (D.S.C. 1980). We also conclude that the *Davis* rule does not apply to employment discrimination claims.

## III. NONFILING PLAINTIFFS

Plaintiffs Byram, Globetti and Green never filed EEOC complaints as to their alleged layoff and recall discrimination. The district court ruled that because none of the three filing plaintiffs (Allen, Lankford and Nolen) had submitted a timely EEOC complaint as to her own individual claims, the nonfiling plaintiffs were also time-barred.[2] We uphold this ruling.

█ The timely filing of an EEOC complaint is a prerequisite to a Title VII suit. *Crawford v. United States Steel Corp.*, 660 F.2d 663, 665 (5th Cir. 1981); *Wheeler v. American Home Products Corp.*, 563 F.2d 1233, 1238 (5th Cir.), *reprinted*, 582 F.2d 891, 897 (5th Cir. 1977). However, in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement. *Crawford v. United States Steel Corp.*, 660 F.2d at 665–66. We refer to this rule as the "single filing rule." Here, no filing plaintiff submitted an EEOC complaint that was timely as to that plaintiff's individual claim.

█ In response to this problem, plaintiffs advance the novel theory that because Lankford's December 15, 1969, filing occurred within 180 days of one of Allen's contested layoffs (December, 1969 to April, 1970), although not within 180 days of Lankford's own most recent contested layoff (ending in March, 1969), then at least Allen's claims survive even though Lankford's claims may not. We note that all the cases applying the single filing rule have focused on the threshold issue of whether the filing plaintiff submitted a timely EEOC complaint as to that plaintiff's individual claim. *See, e. g., Crawford v. United States Steel Corp.*, 660 F.2d at 665 & n.6 (defendant company and union did not question timeliness of EEOC charges filed by filing plaintiffs); *Clanton v. Orleans Parish School Board*, 649 F.2d 1084, 1094 n.13 (5th Cir. 1981) (one or more of original plaintiffs filed timely EEOC complaint); *Wheeler v. American Home Products Corp.*, 563 F.2d 1233, 1239 (5th Cir.), *reprinted*, 582 F.2d 891, 897 (5th Cir. 1977) (same).[3]

We conclude that *Hodge v. McLean Trucking Co.*, 607 F.2d 1118 (5th Cir. 1979), especially as interpreted by *Crawford v. United States Steel Corp.*, 660 F.2d 663 (5th Cir. 1981), weighs against the expansion of the single filing rule to cover plaintiffs' novel theory. As interpreted by *Crawford*, *Hodge* holds that when no original plaintiff has timely filed, then other potential plaintiffs who also have not timely filed cannot qualify as intervenors. 607 F.2d at 1120–21 (discussed in *Crawford v. United States*

---

2. Contrary to plaintiffs' contentions, the district court did *not* dismiss the nonfiling plaintiffs' claims because the filing plaintiffs did not succeed on the merits of their claims. The court observed that the nonfiling plaintiffs could proceed with their claims only "if any of the [filing plaintiffs] had any viable claim dealing with layoffs that was within the jurisdiction of the court." (Record, vol. II, at 40). We conclude that the district court clearly conditioned the nonfiling plaintiffs' claims upon the timeliness of the filing plaintiffs' EEOC complaints, not upon the success on the merits of the filing plaintiffs' claims. The term "jurisdiction" has often been applied to the 180-day filing requirement of Title VII. We recently discussed this loose and improper use of the term, and concluded that the requirement is in the nature of a limitations period and not a jurisdictional bar. *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 587–89 (5th Cir. 1981) (en banc).

3. Plaintiffs do not cite and we have not found any case indicating that the rule is any different in the class action context: the class action cases also focus on whether some plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claims. *See Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1254–55 (5th Cir. 1979) (because claims of class representatives were properly before court, district court may not dismiss class claims and claims of other named plaintiffs who did not file EEOC complaint), *adopted in relevant part upon review en banc*, 619 F.2d 459, 463 (5th Cir. 1980), *aff'd on other grounds*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968) (once aggrieved person raises particular issue with EEOC that he has standing to raise, he may bring action for himself and for similarly situated class).

*Steel Corp.*, 660 F.2d at 665 n.7 (original plaintiff in *Hodge* failed to file timely EEOC complaint and none of would-be intervenors had filed)). Thus, we further conclude that plaintiffs like Byram, Globetti and Green, who have not themselves filed timely EEOC complaints, cannot rely upon the EEOC complaint of another, when the latter complaint itself is not timely as to the filing party's own individual claims. Accordingly, we hold that no claim of the nonfiling plaintiffs in this case was the subject of a timely EEOC complaint.

## IV. RESTROOM FACILITIES

■ The district court ruled that plaintiffs waived their claim of discriminatory restroom facilities by failing to include it in the pretrial order. Although plaintiffs introduced at trial evidence on the restroom issue, the district court considered that evidence only as background information on U.S. Steel's general attitude toward female employees. We conclude that the district court did not abuse its discretion in refusing to consider the restroom issue as a separate Title VII claim. The purpose of the pretrial conference and order in this case was to attempt to narrow for trial the broad claims of discrimination raised in the complaint. If plaintiffs desired to preserve the restroom issue, they should have clearly listed it as a separate claim, as they did for the layoff, recall, promotion and unequal pay claims. A pretrial order is not a tentative agreement; it "controls the subsequent course of the action, unless modified at trial to prevent manifest injustice." Fed.R. Civ.P. 16. We perceive no reason to disturb the district court's ruling.

## V. EXCLUSION OF CERTAIN EXHIBITS

■ At the conclusion of evidence, the district court excluded two bulk exhibits of personnel records relating to plaintiffs Nolen and Lankford. Both exhibits evidently contained both admissible and inadmissible material. The court ruled that the offer of plaintiffs' counsel to extract the inadmissible material and then to resubmit the exhibits was untimely. We express no views on the propriety of the exclusion of the exhibits because the court's refusal to admit the files was harmless error. We have decided this case on limitations grounds. Plaintiffs have not argued that any information contained in the two exhibits would in any way affect the limitations issue. Thus, the exclusion was harmless error.

## VI. THE STEELWORKERS AND THE LOCAL

■ The district court ruled that from March, 1969, to May, 1973, neither the Steelworkers nor the Local had in any way failed to adequately represent plaintiffs' grievances. Plaintiffs do not contest this ruling. In addition, because plaintiffs failed to file EEOC complaints within the 180-day limitations period, they have no timely Title VII claim against either the Steelworkers or the Local for participating in U.S. Steel's asserted gender discrimination. Thus, we affirm the dismissal of plaintiffs' complaint as to the Steelworkers and the Local.

## VII. COSTS

After dismissing plaintiffs' complaint, the district court taxed costs against plaintiffs. Relying upon Fed.R.Civ.P. 54(d) and 68, the court awarded U.S. Steel $1,625.60 in deposition costs and the $20 docket fee but denied U.S. Steel's request for $7,625 in paralegal expenses.[4] On appeal, plaintiffs assert that U.S. Steel is entitled only to the $20 docket fee. In its cross-appeal, U.S. Steel argues that in addition to the costs taxed by the district court, U.S. Steel is entitled to its paralegal expenses. We affirm the district court's award of costs.

---

4. Plaintiffs argue that U.S. Steel requested deposition costs and paralegal expenses only under Rule 68. We reject this contention. Fairly read, U.S. Steel's memorandum to the district court on the cost issue requests deposition costs and paralegal expenses under both Rules 54(d) and 68. Moreover, the district court itself granted deposition costs and denied paralegal expenses in reliance upon both rules.

■ In a recent decision, the Supreme Court held that Rule 68 applies only when the district court enters judgment in favor of the plaintiff for an amount less than the defendant's settlement offer. *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 351–52, 101 S.Ct. 1146, 1149–50, 67 L.Ed.2d 287, 292 (1981). Here, the district court entered judgment in favor of defendant U.S. Steel, not in favor of plaintiffs. Thus, U.S. Steel may not recover costs under Rule 68.

■ In its discretion, the district court may award Rule 54(d) costs to a prevailing defendant, like U.S. Steel, in an employment discrimination action. *Jones v. City of San Antonio,* 568 F.2d 1224, 1226 (5th Cir. 1978). The cost award may include the reporting fees for depositions that are reasonably necessary for use in the case, even though the depositions may not have been used at trial. *United States v. Kolesar,* 313 F.2d 835, 837–38 (5th Cir. 1963); *Jeffries v. Georgia Residential Finance Authority,* 90 F.R.D. 62, 63 (N.D.Ga.1981); 28 U.S.C.A. § 1920(2) (West 1966); 4 *Moore's Federal Practice,* ¶ 26.82 at 26–574 to 26–575 (1981); 6 *Moore's Federal Practice,* ¶ 54.77[4] at 1720 to 1721 (1981). The district court has great latitude in determining whether an award of deposition costs is warranted. *Newman v. A. E. Staley Manufacturing Co.,* 648 F.2d 330, 337 (5th Cir. 1981); *In re Nissan Antitrust Litigation,* 577 F.2d 910, 918 (5th Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

■ Here, the district court awarded U.S. Steel the reporting fees for the depositions of all six plaintiffs. Because all six plaintiffs were listed as potential trial witnesses, the district court reasoned, their depositions were reasonably necessary to prepare a defense, even though only two of the six depositions were used at trial. Oth-

er district courts have awarded prevailing parties the costs of taking depositions of opposing parties. *See, e. g., Griffin v. Collins,* 443 F.Supp. 1010, 1014 (S.D.Ga.1978); *Christian v. Tackett,* 86 F.R.D. 220, 222 (N.D.Miss.1979); *Worley v. Massey-Ferguson, Inc.,* 79 F.R.D. 534, 537 (N.D.Miss.1978). We find no abuse of discretion in awarding deposition costs here.

■ In addition to deposition costs, U.S. Steel argues that it is also entitled to paralegal expenses as a part of Rule 54(d) costs. Even though separately billed to the client, paralegal expenses are not "costs" within the meaning of Rule 54(d). Such expenses are separately recoverable only as part of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally done by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses. *Jones v. Armstrong Cork Co.,* 630 F.2d 324, 325 & n.1 (5th Cir. 1980).

■ Here, the district court ruled that as a prevailing defendant in a Title VII case, U.S. Steel could not recover attorney's fees because the plaintiffs' case was not frivolous, unreasonable or without foundation. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). U.S. Steel does not challenge this ruling, but argues only that paralegal expenses are recoverable costs under Rule 54(d). Accordingly, we uphold the district court's denial of paralegal expenses.[5]

For the reasons discussed above, the district court's judgment in favor of defendants is

**AFFIRMED.**

5. Alternatively, U.S. Steel argues that at least part of its paralegal expenses are recoverable fees for copies of papers necessarily obtained for use in the case. 28 U.S.C.A. § 1920(4) (West 1966). This contention is without merit. As to this particular part of the claimed paralegal expenses, the paralegal's affidavit reveals that she assisted plaintiffs' counsel in the pulling of certain Tin Mill employees' employment record cards for copying by plaintiffs' counsel. U.S. Steel cannot recover the paralegal's salary for this work because the fees for "copies of papers" permitted under § 1920(4) allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication.