Patricia Shipley, Wife of/and Martin R. SWIFT, Plaintiffs-Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and State Farm Fire & Casualty Co., Defendants-Appellants.

No. 85–3595.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1986.

Ward & Clesi, Joseph R. Martin, Antho-
ny J. Clesi, Jr., New Orleans, La., for de-
fendants-appellants.

Darryl J. Tschirn, Metairie, La., John M.
Robin, Covington, La., for plaintiffs-appel-
lees.

Before BROWN, REAVLEY and
JONES, Circuit Judges.

REAVLEY, Circuit Judge:

A jury awarded plaintiff Patricia Shipley
$400,000 for the pain and suffering her son
underwent before his death due to injuries
he received from an automobile accident.
Defendants State Farm Mutual Automobile
Insurance Company and State Farm Fire &
Casualty Company now appeal the denial
of their motion for judgment notwithstand-
ing the verdict (JNOV) or, in the alterna-
tive, a new trial. We remand for a new trial
unless the plaintiff accepts a remittitur of
the damages.

### Facts

Frederick Swift and David Stoltz left
Mandeville, Louisiana enroute to Pensaco-
la, Florida the morning of March 27, 1982.
The two were traveling in a Honda Civic.
Just outside of Pensacola the Honda, driv-
en by Stoltz, veered off I–10 and struck the
rear of a truck parked on the shoulder of
the road. Stoltz was killed instantly. (An
autopsy subsequently revealed that Stoltz's
blood alcohol level was .268.) Swift was
alive, but he was unconscious and severely
injured. (He had no alcohol in his blood.)
Swift was admitted to the Baptist Hospital
in Pensacola and remained in a comatose
state until his death 100 days after the
accident. Due to his injuries, his spleen
was removed, surgery was performed on
both his broken legs, fluid was removed
from inside his skull and a device inserted
to measure cranial pressure, a tracheosto-
my was performed, and other surgical pro-
cedures were carried out.

Patricia Shipley, Frederick's mother,
filed a survival action on March 27, 1984, in
the United States District Court for the
Eastern District of Louisiana against State
Farm Mutual Automobile Insurance Com-

pany and State Farm Fire & Casualty Company. She sought recovery under the uninsured/underinsured motorist provisions of a liability policy issued by State Farm auto and an umbrella policy issued by State Farm Fire to Martin Swift (Frederick's stepfather). The district court's judgment, based on a jury verdict, awarded Shipley $400,000 damages for Frederick's pain and suffering. Defendant's motion for a JNOV or new trial was denied.

## Discussion

### I.

 We consider initially Shipley's contention that we lack jurisdiction to consider this appeal. The jury returned its verdict against the defendants on June 25, 1985; final judgment was entered on July 24, 1985. On July 3, 1985, prior to the entry of judgment, defendants had filed a motion for a JNOV or a new trial. Defendants' motion for JNOV or a new trial was not disposed of until it was denied on September 26, 1985. Defendants filed a notice of appeal of the denial of their motion on September 27, 1985. Shipley argues that the premature filing of defendants' post-trial motion did not toll the time from final judgment for filing a notice of appeal. Since the notice of appeal was filed on September 27, more than 30 days after the July 24 judgment, the filing of the notice was, according to Shipley, untimely, thus depriving this court of jurisdiction. *See* Fed.R.App.P. 4(a). We find no merit in this contention.

While Rule 4 requires that notice of appeal be filed 30 days from the entry of judgment, the rule also provides that certain motions toll the running of the 30-day period.

> If a *timely* motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional find-

ings of fact ...; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

Fed.R.App.P. 4(a)(4) (emphasis added). Fed.R.Civ.P. 50(b) and Fed.R.Civ.P. 59(b) require only that motions for a JNOV or a new trial be served *not later* than ten days after the entry of judgment; they do not prohibit the filing of such motions before entry of judgment.[1] Since the defendant's motion was filed before the ten-day period after judgment ended, it was timely, and the time for appeal was tolled until the motion was denied on September 26. The notice of appeal, filed the day after defendants' motion was denied, was therefore timely, and jurisdiction is proper.

### II.

 Defendants first assert that the trial court erred in denying their motion for a JNOV, or, in the alternative, a new trial because Shipley failed to prove that David Stoltz was an uninsured/underinsured motorist. We do not agree. An insured who is injured by an uninsured or underinsured motorist ("UM") may recover from his own insurer whatever damages he is "legally entitled to recover" from the UM (unless the insured waived coverage under the UM provision). La.Rev.Stat.Ann. § 22:1406(D)(1) (West 1978). The insured bears the burden of alleging and proving the uninsured status of the offending motorist. *Loupe v. Tillman*, 367 So.2d 1289, 1290 (La.App.1979). Here, because the trial court determined that the parties had stipulated to Stoltz's UM status in the pre-trial order, the issue never went to the jury. We review a trial court's interpretation of a pre-trial order created under Rule 16 only for abuse of discretion. *See Allen v. United States Steel Corp.*, 665 F.2d 689, 696 (5th Cir.1982).

---

1. A notice of appeal filed prior to disposition of a Rule 50(b), Rule 52(b) or Rule 59 motion has no effect under the express provisions of Fed.R. App.P. 4(a)(4). There is nothing in the rules to justify a similar disregard for motions filed prior to the docketing of judgments, and the consequences thereof would be highly undesirable.

■ The pre-trial order stipulated that: "COVERAGE UNDER THE POLICY IS NOT CONTESTED; LIABILITY IS CONTESTED." Defendants claim that by so stipulating they agreed only that (1) the policy was in effect at the time of the accident; and (2) Frederick was an insured individual under the policy. According to Shipley, however, the stipulation removed the question of Stoltz's status from the case, thereby leaving for the jury's determination only such "liability" questions as whether Stoltz was negligent and whether Frederick was contributorily negligent or assumed the risk of riding with a drunk driver, as well as the determination of damages. The trial court adopted Shipley's interpretation. It would be much easier to construe Shipley's coverage as not embracing the insurer's liability due to Stoltz's UM status if we were looking at nothing more than one isolated sentence. But in interpreting the effect of a pre-trial order it is necessary to consider the order as a whole. The pre-trial order in this case failed to list Stoltz's UM status as either a contested issue of fact or a contested issue of law. Indeed, there is no mention of Stoltz's UM status anywhere in the order.

We have consistently encouraged trial courts to construe pretrial orders so as to limit the issues actually tried. *See, e.g., Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982); *Allen,* 665 F.2d at 696; *Hodges v. United States,* 597 F.2d 1014, 1017 (5th Cir.1979). "Once the order is entered, it controls the scope and course of the trial. If a claim or issue is omitted from the order, it is waived." *Flannery,* 676 F.2d at 129 (citations omitted). The failure to adhere to such a rule would bring back the days of trial by ambush and discourage timely preparation by the parties for trial. We find no abuse of discretion and perceive no reason to disturb the trial court's ruling that the stipulation as to "coverage" included Stoltz's UM status.

## III.

■ Defendants argue next that Shipley did not meet her burden of proving that Frederick was conscious prior to his death. "While the Louisiana courts have ofttimes stated that there must be evidence of 'conscious pain and suffering' before a recovery will be allowed, recent cases have made clear that an award for pain and suffering is permissible when there is evidence that the decedent was 'sensitive to and aware of pain.'" *Miller v. National Fire & Marine Insurance Co.,* 578 F.2d 125, 126 (5th Cir. 1978) (citations omitted). Following the *Boeing* standard of review, *see Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc), we find that there was substantial evidence from which the jury could conclude that Frederick was at times sensitive to and aware of pain.

There was no dispute that Frederick was in a comatose state during the 100 days between the accident and his death; the parties disagree, however, over Frederick's state of awareness while comatose. Anna Meiners, Frederick's girlfriend, testified that during that 100 days, when she spoke to Frederick, a heart monitor indicated that his heart beat significantly faster. She also testified that when she asked Frederick a question he would answer according to a pre-determined code—one blink for yes, two blinks for no. This testimony was corroborated by Frederick's father and his mother. There was testimony that Frederick would respond to someone holding his hand by squeezing the hand. There was also testimony that he would smile or cry in response to statements made in his presence, and there was evidence that he could perceive pain.

Opposed to this testimony by Frederick's friends and family was the testimony of Dr. Stewart Skippey, who stated that Frederick, because of the nature of his injuries, "was never able to appreciate anything." While Frederick might respond reflexively to outside stimuli, his "brain ... was never clear enough ... to appreciate what you and I consider pain." Dr. Richard Levy also testified at length regarding Frederick's likely inability to feel pain or emotions due to his injuries. Medical opinion, particularly when uncontradicted, may some-

times overcome lay testimony. The medi-- cal opinion in this case, however, was not uncontradicted. Dr. Charles Chapleau, Frederick's treating physician, testified that people with Frederick's physical condition could appreciate outside stimulation, including pain. Moreover, he concluded that there was "good medical evidence that [Frederick] was able to perceive pain." Finally, even Dr. Levy conceded that under the circumstances presented to him he could only conclude that Frederick was able at times to experience feelings of emotion and physical pain. Given the conflicting testimony among the doctors and the consistent testimony of Frederick's family and friends, we cannot say as a matter of law that Frederick was not at times aware of pain.

### IV.

■ Defendants next argue that recovery under their policies is barred because Frederick Shipley was contributorily negligent or assumed the risk of riding with David Stoltz while Stoltz was intoxicated. Under Louisiana law, a passenger is barred from recovery if he agrees to ride in a car where: (1) the driver is intoxicated; (2) the driver's intoxication is the cause of the accident; and (3) the passenger knew or should have known of the driver's condition. *Prestenbach v. Sentry Insurance Co.*, 340 So.2d 1331, 1334 (La.1976). The defendant bears the burden of proving these facts. *Id.* Here, the jury found that Shipley was not contributorily negligent or did not assume the risk of riding with David Stoltz. We must accept this finding if there is substantial evidence to support it.

■ The evidence showed that Stoltz's blood alcohol level was a high .268, and beer cans were found in the car. There was also evidence that Frederick Shipley and Stoltz were best friends and that a close friend would have known that a person with Stoltz's blood alcohol level was intoxicated. However, there was also evidence from which the jury could conclude that Shipley was asleep during the trip and therefore unable to observe Stoltz's behavior. Sandy Courtney, an inspector at the weigh station where the accident occurred and an eye-witness to the accident, testified that immediately prior to the accident he did not see a passenger in the car although he did see the driver. Martin Swift testified that Frederick usually slept during long trips in automobiles and that after the accident he found a quilt across the passenger seat, which was in the reclining position. Such evidence is substantial evidence from which the jury could conclude that Frederick was asleep during the ride to Pensacola and therefore was unable to know of Stoltz's condition.

### V.

■ Finally, defendants argue that the jury's verdict of $400,000 for Frederick's pain and suffering was excessive. We agree. Under the circumstances, the award was so excessive that it "clearly exceed[ed] that amount that *any* reasonable man could feel the claimant [was] entitled to." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir.1982) (emphasis in original) (quoting *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880 (5th Cir.1977)); *see Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985). As we discussed above, there was substantial evidence, based primarily on the testimony of his family and friends, from which the jury could conclude that Frederick was aware of pain. The evidence, however, also established that Frederick's consciousness of pain was very limited.

First, Frederick was conscious of pain for limited periods of time only. Unlike Frederick's family and friends, who saw Frederick occasionally, Dr. Chapleau, or one of his colleagues, saw Frederick every day at least once and sometimes twice. The doctors and nurses were not able to get Frederick to exhibit signs of consciousness or awareness, such as squeezing his hand or blinking in response to questions. We conclude from this that Frederick was not always sufficiently conscious to experi-

ence pain. Second, Frederick's perception of pain, when he did experience it, was limited. As Dr. Chapleau stated, Frederick's perception of pain was "disordered." Dr. Chapleau, measuring Frederick's consciousness on a scale of 3–15, with 15 being wide awake and normal and 3 being totally unresponsive to pain, concluded that Frederick's perception of pain was a low 4–5 shortly after the accident and only slightly greater—5–7—shortly before his death. Although Dr. Chapleau stated that he often administers pain-killing drugs, apparently he felt that it was unnecessary to do so in Frederick's case. Given the circumstances surrounding Frederick's ability to feel pain, we feel that an award of $200,000 is the highest reasonable award that we can sustain under this evidence. We therefore grant remittitur.

The judgment is vacated. The case is remanded to the district court with instructions to grant a new trial if the plaintiff will not accept a remittitur to the amount of $200,000 in damages.

VACATED and REMANDED.