Isiah LUMPKIN, Dennis Matthews, Albert Turner, Charles Dillon, Charles Andrews, Laterrance Baker, Christopher Speight, Teddy Lewis, Broderick Thompson, Odell Causey, on Behalf of Themselves and Others Similarly Situated, Plaintiffs,

v.

COCA–COLA BOTTLING COMPANY UNITED, INC., Defendant.

No. CIV.A. 3:01CV662LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 31, 2003.

William M. Kulick, Kulick & Associates, P.C., Ocean Springs, MS, Sharon S. Day, Brandon, MS, for Plaintiffs.

W. Wayne Drinkwater, Jr., Amanda K. Jones, Bradley, Arant, Rose & White, LLP, Jackson, MS, Jennifer L. Anderson, Laurie M. Chess, Alan F. Kansas, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendant Coca–Cola Bottling Company United, Inc. (Coca–Cola) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.[1]

---

1. The court notes that there is pending a motion by defendant to strike certain exhibits and por-

The ten named plaintiffs in this case, African–Americans who are currently or were formerly employed by Coca–Cola at its facilities in McComb, Mississippi, filed this suit pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1871, on behalf of themselves and on behalf of others similarly situated, alleging that over a period of more than thirty-five years, Coca–Cola's employment policies and practices at its McComb facility (and in particular its stated preference for promotions from within with rules requiring job postings and training for promotion opportunities) have had a disparate impact on African–American employees, and charging further that throughout the history of the McComb facility, including at all times since the 1965 enactment of the Civil Rights Act, Coca–Cola has engaged in a pattern and practice of intentional racial discrimination. According to plaintiffs' allegations, both before, and continuously since enactment of the Civil Rights Act, the McComb plant has been racially segregated, with whites occupying all management, office and sales positions and the more favorable blue collar positions, and with blacks routinely relegated to the lowest ranks of the company.[2]

In their motion, plaintiffs seek certification of a class consisting of:

> All past, present, and future African–American persons employed by the Coca–Cola bottling facility in McComb, Mississippi ... adversely affected by the company's racially discriminatory employment policies, rules, and/or practices....

That is, they seek certification of a plaintiff class consisting of all blacks who have worked at the McComb plant since the Civil Rights Act was enacted more than thirty-five years ago.[3] Under Rule 23, which governs class certification, a class may be certified only if the plaintiffs show that "the class is too numerous to allow simple joinder; there are common questions of law or fact; the claims or defenses of the class representatives are typical of those of the class; and the class representatives will adequately protect the interests of the class." *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 418 (5th Cir.2001). Moreover, even where all those requirements are met, the plaintiffs

---

tions of exhibits submitted by plaintiffs in support of their motion. This motion is well taken. There is also pending a motion by Coca–Cola for leave to file a sur-reply memorandum in opposition to plaintiffs' motion for class certification. That motion is granted.

**2.** Plaintiffs charge that employment decisions in the McComb workplace have been tainted for more than thirty-five years by the unlawful race-based desire to keep in place the glass ceiling that so apparently exists in the plant, and has done so by willfully and deliberately:

- failing to post job openings so blacks will not inquire about (or learn of) jobs above the glass ceiling;
- treating blacks differently when asking for transfers to other blue collar jobs below the glass ceiling—preferring whites with less seniority and less qualified;
- treating them disparately when requesting better routes or shift changes—preferring whites with less seniority or hiring whites for the open routes or shifts to keep from granting the blacks' pending requests;
- paying disparate wages to blacks (and/or ignored its own rules as to the stated role of seniority in terms of pay)
- creating its own pay system called "Chinese Overtime" that it has used to harm blacks for years in the name of profit—overwhelmingly assigning blacks to Chinese Pay jobs, putting

them on the longest routes and hardest routes that then require overtime, and paying them 1/3 or less of their normal hourly rate for all overtime hours (completely ignoring rules on time and a half—but only for blacks ... as whites are assigned to jobs that pay as required by law);

- segregating job classifications (with blacks segregated into the hardest labor jobs and whites holding all jobs in the easier blue collar departments);
- segregating company-sponsored events (or sponsored events where blacks have been totally excluded);
- disparately disciplining blacks (with blacks being talked to like dirt—yelled at and cursed—and whites not facing such treatment);
- "chilling" when it comes to blacks complaining about treatment in the workplace; and
- catering to *perceived* white vendor/customer preferences in assigning duties and routes.

Defendant denies all of plaintiffs' charges.

**3.** Although plaintiffs define the proposed class in terms of African–Americans working at the plant who have been "adversely affected" by defendants' alleged racial discrimination and discriminatory policies and practices, they have made clear that they consider this definition to include all blacks who have worked at the plant at any time since 1965.

must also satisfy Rule 23(b), which requires that plaintiffs establish (1) that the prosecution of separate actions would create the risk of inconsistent adjudications with respect to individual class members and incompatible standards of conduct, Rule 23(b)(1), or (2) that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," Rule 23(b)(2), or (3) that the common issues predominate, and that class treatment is the superior way of resolving the dispute, Rule 23(b)(3). *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 623–24 (5th Cir.1999) ("A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3).").[4]

Having considered the parties' evidence and arguments, the court is not persuaded that the class proposed by plaintiffs for certification is proper, since the claims of most of the proposed class members are patently untimely. Further, since plaintiffs have not shown that any class that could properly be certified, i.e., one whose members could fairly and reasonably be found to have timely claims, would meet the numerosity requirement of Rule 23(a), the court concludes that plaintiffs' motion for class certification should be denied.

In their motion, plaintiffs state that they know of forty-five class members, and that there are some others—perhaps ten to twenty—whose identities are not known at this time. Thus, they say, a conservative estimate would place the number in the proposed class in the upward range of fifty-five to sixty-five. Defendants point out, however, that many—in fact, most—of these prospective class members are persons who no longer work for Coca–Cola and who did not work for Coca–Cola at any time during the applicable limitations period. Indeed, they note that many of these persons who would be members of plaintiffs' proposed class have not worked for the company in years, or even decades; and some of the names plaintiffs have come forward with are of persons who are no longer even living. Defendant submits that these plaintiffs have no standing to represent those persons whose claims are time-barred, and those for whom they would have standing are not sufficiently numerous to warrant class certification.

Plaintiffs respond that since the named class representatives filed timely charges of discrimination with the EEOC, then under the "single filing rule," the prospective class members are also properly considered to have complied with the administrative requisites for their suit; and plaintiffs further assert that because of the applicability of the continuing violation doctrine in light of the allegations of a pattern and practice of discrimination and of the existence of a continuously hostile work environment, the class representatives and prospective class members may timely assert claims encompassing the entire thirty-five years since enactment of the Civil Rights Act because the alleged discrimination has been ongoing throughout this period of time.

Having considered the parties' arguments, the court observes first that it does not necessarily accept defendant's analysis of the limitations issue, since it fails to account for the potential applicability of the continuing violation doctrine to at least some of plaintiffs' claims. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[5] Nevertheless,

---

**4.** Plaintiffs here seek certification of their disparate impact claim under Rule 23(b)(2) (with no opt out) and certification of their pattern and practice disparate treatment claim under Rule 23(b)(3), with an opt-out that will enable those who prefer to pursue non-class individual disparate treatment claims individually, or not at all, if they desire.

**5.** In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held that "discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 122 S.Ct. at 2072. However, the Court rejected the application of the continuing violation doctrine in hostile work environment cases. *Id.,* 122 S.Ct. at 2074.

The Court in *Morgan* expressly noted that its opinion was not addressed to "pattern-or-practice" claims, *id.,* 122 S.Ct. at 2073 n. 9 ("We

the court is persuaded that despite the possible relevance of the continuing violation doctrine to the claims of the named plaintiffs and certain members of the prospective class, neither that doctrine, nor the "single filing rule," could operate to revive the claims of prospective class members whose employment with Coca–Cola terminated prior to the limitations period.

■ Title VII requires a plaintiff to file a charge with the EEOC within 180 or 300 days of the unlawful discriminatory act. *See* 42 U.S.C. § 2000e–5(e). Although the timely filing of an EEOC complaint is a prerequisite to a Title VII suit, under what is known as the "single filing rule,"

> in a [class action suit, or in a] multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement. *Crawford v. United States Steel Corp.*, 660 F.2d at 665–66.

*Allen v. U.S. Steel Corp.*, 665 F.2d 689, 695 (5th Cir.1982);[6] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1223 (5th Cir.1995) ("This so-called 'single filing rule' generally allows a plaintiff, who did not file an EEOC charge, to piggyback on the EEOC complaint filed by another person who is similarly situated."). Thus, in determining whether the claims of class members (or prospective class members) may be timely asserted, the focus is on "whether some plaintiff has filed a timely

EEOC complaint as to that plaintiff's individual claims." *Allen*, 665 F.2d at 695 n. 3.

■ Two requirements essential to the "single filing rule" are that (1) "plaintiff must have timely filed an EEOC complaint that is not otherwise defective," and (2) "the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame.' " *Carter v. West Pub. Co.*, 225 F.3d 1258, 1262 (11th Cir.2000) (citations omitted).[7]

■ In this case, it is undisputed that each of the named plaintiffs filed charges of discrimination with the EEOC between December 17, 2000 and December 30, 2000, alleging claims of class-wide disparate impact and a class-wide pattern and practice of disparate treatment based on race at the Coca–Cola facility in McComb which was charged to have been ongoing for a period of more than thirty years. And defendant does not dispute that at least one of these charges was timely as to at least some of the claims sought to be asserted, namely those based on discrimination alleged to have occurred within the 180 days preceding the filing of the latest charge. To the extent that plaintiffs base their Title VII claims on conduct predating that period, defendant insists their claims are time-barred. Plaintiffs, on the other hand, take the position that their claims in this case relate to conduct and the discriminatory environment and conditions that are part of a "30+ year pattern and practice of discrimination." Thus they con-

have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here"), though the Court did observe that a party cannot avoid a time-bar on the basis of the continuing violation doctrine merely by labeling discrete acts as an employment "practice." *See id.*, 122 S.Ct. at 2071–72 (stating that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing," and thus a "practice" may be "a discrete act or single 'occurrence' even when it has a connection to other acts," and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act").

6. "The policy behind the single filing rule is that '[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have

to process many identical complaints with the EEOC.' " *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir.1995) (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir.1968)). "As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking." *Id.*

7. The Fifth Circuit also requires that "the charge must have provided some notice of the 'collective or class-wide nature of the charge,' " and, of course, "that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join." *Bettcher v. Brown Schools, Inc.*, 262 F.3d 492, 494–95 (5th Cir. 2001). Plaintiffs' charges met that requirement.

clude that their claims appropriately and timely cover this entire time period, and the class thus appropriately encompasses all blacks who have worked at the McComb facility since 1965. In other words, plaintiffs have invoked the continuing violation doctrine to establish the timeliness of their claims based on conduct which predated Title VII's 180-day limitations period.[8] In the court's opinion, plaintiffs' reliance on the continuing violation doctrine and/or the single filing rule in an attempt to bring within the proposed class all black employees who have worked at the McComb facility in the past thirty-five or so years, is unavailing, for "the law is clear that neither can be used to revive a stale claim." *Velez v. QVC, Inc.,* 227 F.Supp.2d 384, 398 n. 7 (E.D.Pa.2002).

■ First, while "all … cases applying the single filing rule have focused on the threshold issue of whether the filing plaintiff submitted a timely EEOC complaint as to that plaintiff's individual claim," *Allen,* 665 F.2d at 695, the fact that at least one plaintiff has filed a timely charge as to his own claims does not in all cases mean that other persons who suffered similar alleged wrongs may piggyback their claims on his. On the contrary, it has been recognized that "a class action complaint cannot revive claims which were already time-barred when the original charge was filed." *Vinson v. Seven Seventeen HB Philadelphia Corp.,* 2001 WL 1774073, *12 (E.D.Pa.2001) (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 246 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)); *see also Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1221–1222, *reh'g en banc denied,* (11th Cir.2001) (stating that "[w]e can find no authority … for allowing one plaintiff to revive a stale claim simply because the allegedly discriminatory policy still exists and is being enforced against others."); *Compton v. National League of Professional Baseball Clubs,* 995 F.Supp. 554, 560–561 (E.D.Pa.), *aff'd,* 172 F.3d 40 (3d Cir.1998) (stale claims cannot be

revived through mere allegation that discrimination continued to the present). Likewise, while the continuing violation doctrine has been applied in the class action context, courts that have considered the issue have concluded not only that all class members must have suffered an adverse employment action within the given time period, but have held, more pertinently, that irrespective of a continuing pattern or practice of discrimination by an employer, "those individuals who terminated their employment with [the defendant] prior to the 300-day cutoff [under Title VII] may not join the class" challenging such discrimination. *Avagliano v. Sumitomo Shoji America, Inc.,* 103 F.R.D. 562 (S.D.N.Y.1984) (rejecting argument that continuing violations doctrine would allow the court to include as class members other employees who had left the defendant's employment more than 300 days before the earliest date that any class representative filed an EEOC claim, stating that class "plaintiffs … may not represent those who could not have filed charges during the applicable limitation period"); *Rodriguez v. United States Dept. of Treasury,* 131 F.R.D. 1, 10–11 (D.D.C.1990) (in employer-employee cases, the limitations period starts, notwithstanding the continuing violation, upon termination of the employer-employee relationship and either individual or class claims must be brought within that limitations period). As explained by the court in *Velez, supra,*

> The rationale against allowing the revival of stale claims is sound. First, "[w]hen an employee is terminated, the employment relationship ends; and the fear of reprisal and the reasons for allowing employees to claim a continuing discriminatory policy are removed." *Hipp,* 252 F.3d at 1222 n. 12 (quoting *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 614 (10th Cir.1988)); *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.1982)("A refusal to hire or a decision to fire an employee may place the victim out of reach of any further

8. In their rebuttal memorandum, plaintiffs argue:
> By its very nature, the pattern and practice claim alleged in this case is a "continuing violation." The same is true with the disparate impact claim—as it is by nature "continu-

ing" for as long as the policy attacked is in place and is disparately impacting the protected class. The same is true with the hostile environment claim. It is a claim that by its nature is "continuing."

effect of company policy, so that such a complainant must file a charge within the requisite period after the refusal to hire or termination, or be time-barred."). Second, "if former employees were allowed to assert charges [outside the filing period], the purpose of the statute of limitations would be undermined and employers could be exposed to unlimited suits." *Hipp*, 252 F.3d at 1222 n. 12. Thus, when an employee has left his company, "he must comply with the charge-filing period, and the continuing violation doctrine will no longer save a late claim." *Id.*

227 F.Supp.2d at 398 (concluding that since the last possible dates on which discrimination occurred toward those plaintiffs who had not filed EEOC charges were the dates of their terminations in 1993 and 1995, respectively, and since the statutory period during which they were required to file their claims expired before the date on which the first timely-filed EEOC charge was filed in December 1997, the single filing rule/continuing violation doctrine did not save their claims of discrimination under Title VII).

Consistent with this rationale, the court in *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976), expressed that

> the timely filing of an EEOC charge by one member of a class "[could not] revive claims which were no longer viable at the time of the filing." Any other result would produce an anomaly. Time-barred members could not press their claims individually either before the Commission or judicial tribunals; and surely the employer's liability to them cannot be made to depend upon whether they come into court in a different character. True it is that class actions are liberally permitted in the federal courts, but that procedural device can-

not be used to expand substantive rights. Not surprisingly, then, courts which have considered the question directly have uniformly held that only those employees who could have filed charges with the Commission individually when the class filing was made are properly members of the litigating class.

*Laffey*, 567 F.2d 429, 472 (D.C.Cir.1976) (citations omitted).

 From the foregoing, it is apparent that a proper class for this case could not include all black employees who have worked at the plant in the last 35 years, which is what plaintiffs propose. It appears to the court that many of those employees on whose behalf plaintiffs propose to proceed are persons who could not timely assert any claim against defendant, for many of the prospective class members were not employed by Coca–Cola for well more than 180 days prior to the dates on which the named plaintiffs' charges were filed. And plaintiffs have not demonstrated that a prospective class, when limited to those persons who could do so, is too numerous to allow simple joinder. That is, they have not shown that the number of African–American employees who worked for the company during the 180 days before the named plaintiffs' EEOC charges were filed (or in the three years before suit was filed for their § 1981 claims) [9] is so numerous that joinder would be impracticable.[10]

Because plaintiffs have failed to establish the requisites for class certification under Rule 23(a), it is ordered that their motion for class certification is denied.

---

**9.** The parties have barely mentioned plaintiffs' § 1981 claim to which the continuing theory of violations would be applicable to the same extent it applies to plaintiffs' Title VII claims. Though defendant contends otherwise, the applicable limitations period for plaintiffs' § 1981 claims is likely three years. *See Kozam v. Emerson Elec. Co.*, 739 F.Supp. 307 (N.D.Miss.1990); Miss. Code Ann. § 15–1–49. Only those plaintiffs who were employed by defendant within the three years preceding the date on which this suit was filed could be members of any class, and there has been no showing that the number of such

employees would satisfy the numerosity requirement.

**10.** The court notes that according to defendant, since June 2000, only 30 African–American individuals (including the ten plaintiffs) have been employed at the McComb facility, one of whom is deceased and another three of whom have indicated that they do not wish to participate in this litigation. Plaintiffs are free to seek the joinder of those individuals who may timely assert claims.